# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLOS JIMENEZ, | Civil No. 3:21-cv-1201 |
| Petitioner | (Judge Mariani) |
| v. | |
| STEPHEN SPAULDING, WARDEN, | |
| Respondent | |

## MEMORANDUM

Petitioner Carlos Jimenez ("Jimenez"), an inmate currently incarcerated at the Federal Prison Camp in Lewisburg, Pennsylvania ("FPC-Lewisburg"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Jimenez seeks an Order directing the Bureau of Prisons ("BOP") to award him his earned time credit ("ETC") pursuant to the First Step Act ("FSA") and to release him to home confinement or a halfway house. (*Id.* at pp. 2, 6, 7). For the reasons set forth below, the Court will deny the habeas petition.

**I.    Background**

Jimenez is serving a sixty-month term of incarceration imposed by the United States District Court for the District of Massachusetts for a conviction of conspiracy to possess with intent to distribute heroin. (Doc. 2, p. 1; Doc. 8-1 at pp. 4-5). Jimenez's current projected release date, *via* good conduct time, is March 22, 2023. (Doc. 8-1, p. 3).

The BOP has assessed Jimenez as having a minimum risk of recidivism and having medical, recreation/leisure/fitness, and substance abuse criminogenic needs. (*Id.* at p. 15). He was also assessed to have needs for cognition and finance/poverty. (*Id.*). During his incarceration, Jimenez has completed various programming activities ("PAs"), including Brain Health as You Age, the Arthritis Foundation Walk, and the Non-Residential Drug Abuse Treatment Program. (*Id.* at pp. 16-17). Jimenez is eligible for 35 hours of credit for completing these programming activities. (*Id.* at p. 2 ¶ 8).

The Administrative Remedy Generalized Retrieval demonstrates that Jimenez has filed four administrative remedies while in BOP custody. (*Id.* at pp. 6-8).

In his § 2241 petition, Jimenez asserts that he is entitled to the application of 330 days of ETC to his sentence. (Doc. 2, p. 1; Doc. 3, p. 2). Jimenez seeks "release to [h]ome [c]onfinement/RRC/Supervised Release" and requests that the BOP be enjoined from not using the FSA earned time credits for other similarly situated inmates. (Doc. 1, p. 7).

Respondent contends that Jimenez's § 2241 petition should be dismissed because: (1) Jimenez failed to exhaust his administrative remedies; and (2) the petition is not ripe for disposition.[1] (Doc. 8). For the reasons discussed below, the Court will deny the habeas petition.

---

[1] Respondent asserts that Jimenez's § 2241 petition is not ripe because "[t]he FSA does not require the BOP to provide the time credits for successful completion of EBRR and PAs until the end of the phase-in period, on January 15, 2022." (Doc. 8, p. 11). Additionally, until the end of the phase-in period, the BOP may—but is not required to—begin offering incentives, such as calculating and applying ETCs to inmates who successfully complete EBRRs or PAs. (*Id.* at pp. 11-13). The FSA provides that "[d]uring the 2-year period described in paragraph (2)(A), the priority for such programs and activities shall be accorded

2

## II.   Discussion

### A.   Exhaustion of Administrative Review

Despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing a habeas claim under § 2241. *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981) (*per curiam*)). Thus, "a federal prisoner who . . . fails to exhaust his administrative remedies because of a

---

based on a prisoner's proximity to release date." *See* 18 U.S.C. § 3621(h)(3). The FSA further provides that "[b]eginning on the date of enactment of this subsection, the Bureau of Prisons may begin to expand any evidence-based recidivism production programs and productive activities that exist at a prison as of such date, and may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D." *See id.* § 3621(h)(4).

Courts are divided on the issue of whether habeas claims seeking the application of ETCs are ripe. Several have concluded that such claims will not become ripe until January 15, 2022, the end of the phase-in period. *See, e.g., Cohen v. United States*, No. 20-cv-10833, 2021 WL 1549917, at *2-3 (S.D.N.Y. Apr. 20, 2021); *Kennedy-Robey v. FCI Pekin*, No. 20-cv-01371, 2021 WL 797516, at *4 (C.D. Ill. Mar. 2, 2021); *Hand v. Barr*, No. 1:20-cv-348, 2021 WL 392445, at *5 (E.D. Cal. Feb. 4, 2021), *report and recommendation adopted*, 2021 WL 1853295 (E.D. Cal. May 10, 2021); *Llewlyn v. Johns*, No. 5:20-cv-77, 2021 WL 535863, at *2 (S.D. Ga. Jan. 5, 2021), *report and recommendation adopted*, 2021 WL 307289 (S.D. Ga. Jan. 29, 2021); *Herring v. Joseph*, No. 4:20-cv-249, 2020 WL 3642706, at *1 (N.D. Fla. July 6, 2020). At least one court has concluded otherwise. *See Goodman v. Ortiz*, 20-7582, 2020 WL 5015613, at *6 (D.N.J. Aug. 25, 2020). However, because the Court concludes that Jimenez has failed to exhaust his administrative remedies and is not entitled to earlier release, the Court need not and does not decide whether such claims are generally ripe for review.

procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." See id. at 762. However, exhaustion is not required when it would not promote these goals, such as when exhaustion would be futile. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, No. 00-2958, 2000 WL 1022959, at *2 (E.D. Pa. July 10, 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

The BOP has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (2005)). If an issue raised by the inmate cannot be resolved through this administrative remedy system, the BOP will refer the inmate to appropriate statutorily mandated procedures. 28 C.F.R. § 542.10(c). The system first requires an inmate to present their complaint to staff before filing a request for administrative relief, which staff shall attempt to informally resolve. 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, an inmate may file a formal written complaint to the Warden, on the appropriate form, within twenty calendar days of the date of the event or occurrence and the Warden shall provide a response within twenty

calendar days. 28 C.F.R. §§ 542.14, 542.18. If the inmate is dissatisfied with the Warden's response, he may file an appeal to the Regional Director within twenty calendar days. 28 C.F.R. § 542.15(a). The Regional Director has thirty calendar days to respond. 28 C.F.R. § 542.18. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may be appealed to the BOP's General Counsel at Central Office within thirty calendar days from the date of the Regional Director's response. 28 C.F.R. § 542.15(a). No administrative remedy appeal is considered fully exhausted until reviewed by the BOP's Central Office. 28 C.F.R. § 542.15(a).

The BOP maintains a database known as the SENTRY Inmate Management System ("SENTRY"). In the ordinary course of business, computerized indexes of all formal administrative remedies filed by inmates are maintained by the Institution, Regional, and Central Offices. SENTRY generates a report titled "Administrative Remedy Generalized Retrieval" which allows codes to be entered to identify the reason or reasons for rejecting a request for administrative relief.

Jimenez's Administrative Remedy Generalized Retrieval report reveals that he did not pursue any administrative relief with respect to the claims in the instant habeas petition. (Doc. 8-1, pp. 6-8, Administrative Remedy Generalized Retrieval). The record before the Court indicates that on June 23, 2020, Jimenez submitted Administrative Remedy Number 1028764-F1, requesting home confinement. (*Id.* at p. 7). His request was denied on June 29, 2020, and he did not appeal. (*Id.*). On July 14, 2020, Jimenez submitted Administrative

Remedy Number 1042533-R1 with the Regional Office, requesting a reduction in sentence. (*Id.*). His request was rejected on August 25, 2020, and he did not appeal. (*Id.*). On May 19, 2021, Jimenez filed Administrative Remedy Number 1081401-F1, requesting home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. (*Id.* at p. 8). On May 26, 2021, his request was denied. (*Id.*). On June 14, 2021, Jimenez appealed the denial to the Regional Office, designated as Administrative Remedy Number 1081401-R1. (*Id.*). On July 7, 2021, the appeal was rejected. (*Id.*). Jimenez did not appeal the denial to the Central Office and failed to take any further action with respect to this Administrative Remedy. The record further indicates that Jimenez has not filed any administrative remedies concerning the First Step Act or earned time credits. (*See id.*).

Jimenez does not dispute that he commenced the instant action without first exhausting the BOP's administrative remedy procedure. (Doc. 1, pp. 2-3; Doc. 2, p. 3; Doc. 3, p. 2). Jimenez suggests that exhaustion should be excused because it is futile and because the statutory construction exception to administrative exhaustion applies. (Doc. 3, p. 2). However, even if Jimenez thought pursuit of his administrative remedies would be futile, "[c]ourts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals.'" *Ross v. Martinez*, No. 4:09-cv-1770, 2009 WL 4573686, at *3 (M.D. Pa. Dec. 1, 2009) (quoting *Malvestuto v. Martinez*, No. 1:09-cv-1339, 2009 WL 2876883, at *3 (M.D. Pa. Sept. 1, 2009)); see also *Suarez-Sanchez v.*

*Lane*, No. 4:18-cv-1431, 2019 WL 1645231, at *3-4 (M.D. Pa. Mar. 5, 2019) (concluding that the petitioner's § 2241 petition was subject to dismissal for failure to exhaust because the petitioner "never fully and properly appealed [his] grievance because he apparently deemed the grievance process to be a waste of time"), *report and recommendation adopted*, 2019 WL 1620339 (M.D. Pa. Apr. 16, 2019).

The Court recognizes that administrative exhaustion is not required if "the issue presented only pertains to statutory construction." *Kurti v. White*, No. 1:19-cv-2109, 2020 WL 2063871, at *3 (M.D. Pa. Apr. 29, 2020). In support of his argument, Jimenez cites to *Goodman v. Ortiz*, No. 20-7582 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020). In *Goodman*, the parties did not dispute that the inmate-petitioner had successfully participated in several programming activities that met the requirements of the FSA or had earned a specific number of ETC. *See Goodman*, 2020 WL 5015613, at *2. Instead, the court considered whether the FSA required that the ETC earned by the petitioner be applied before January 15, 2022. *See id.* The court concluded that the inmate-petitioner was exempt from the administrative exhaustion requirement because the matter "present[ed] a narrow dispute of statutory construction" and because "habeas relief should be granted." *See id.* at *3. However, the instant case not only involves when Jimenez is eligible for the application of any ETC, but also involves a dispute as to the specific number of ETCs earned by Jimenez. The latter issue is unrelated to statutory construction and, therefore, the exhaustion requirement cannot be excused. *See Kurti*, 2020 WL 2063871, at *3 (noting

7

that the petitioner "has clearly failed to exhaust administrative remedies with respect to the time credit he requests"); *see also Cohen v. United States*, No. 20-cv-10833 (JGK), 2021 WL 1549917, at *4 (S.D.N.Y. Apr. 20, 2021) (concluding that the inmate-petitioner was not excused from exhausting because the parties disputed his "eligibility for, participation in, and applicability of the various programs he claims to have completed to any potential time credits under the FSA"); *Maggio v. Joyner*, No. 7:21-21-DCR, 2021 WL 1804915, at *1-2 (E.D. Ky. Mar. 25, 2021) (concluding same to determine that the inmate-petitioner's § 2241 petition was subject to dismissal for failure to exhaust). Thus, Jimenez's § 2241 petition must be dismissed for failure to exhaust his administrative remedies. To hold otherwise would frustrate the purposes of the exhaustion doctrine by allowing Jimenez to invoke the judicial process despite failing to complete administrative review. Nevertheless, the Court will address the merits of his petition below.

**B.    Merits of the Habeas Petition**

Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System ("the System") within 210 days of December 21, 2018, the date on which the FSA was enacted. *See* 18 U.S.C. § 3632. The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction ("EBRR") programming appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (4) reassigning an inmate to appropriate EBRRs and

PAs; (5) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (6) determining when the inmate is ready to transfer to pre-release custody or supervised release. *See id.* § 3632(a). Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs." *Kurti*, 2020 WL 2063871, at *4 (citing 18 U.S.C. § 3632(b)).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive earned time credits to be applied toward time in pre-release custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A). An inmate may earn ten (10) days of credit for every thirty (30) days of successful participation. *See id.* Moreover, eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two (2) consecutive assessments may earn five (5) days of time credit for every thirty (30) days of successful participation. *See id.* However, an inmate may not earn time credits for EBRR programs completed prior to the enactment of the FSA. *See id.* § 3632(d)(4)(B)(i). The Attorney General was allowed 210 days after the FSA was enacted to develop and publish the System, which the BOP then used as a guide to implement the EBRRs and PAs. *See id.* § 3632(a). The Attorney General published the System on July 19, 2019, and the BOP then had 180 days, or until January 15, 2020, to implement the System, complete assessments, and begin to assign prisoners to appropriate EBRRs. *See Kurti*, 2020 WL 2063871, at *4 (citing 18 U.S.C. 9 § 3621(h)). Moreover, the FSA provides

that EBRRs and PAs are to be phased in over a period of two (2) years, from January 15, 2020 to January 15, 2022. See 18 U.S.C. § 3621(h)(2).

ETC credits are "earned only when an inmate successfully completes one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate." Hare v. Ortiz, No. 20-14093, 2021 WL 391280, at *9 (D.N.J. Feb. 4, 2021). As noted supra, the BOP has assessed Jimenez as having a minimum risk of recidivism and having medical, recreation/leisure/fitness, and substance abuse criminogenic needs. (Doc. 8-1, p. 15). He was also assessed to have needs for cognition and finance/poverty. (Id.). During his incarceration, Jimenez has completed various programming activities, including Brain Health as You Age, the Arthritis Foundation Walk, and the Non-Residential Drug Abuse Treatment Program. (Id. at pp. 16-17). Jimenez is eligible for 35 hours of credit for completing these programming activities. (Id. at p. 2 ¶ 8).

Pursuant to the BOP's regulations, "a day 'is considered eight hours for purposes of calculating credit under the FSA.' Therefore, 'an inmate is entitled to ten days of creditable time for every 240 hours of programming completed. An inmate with a minimum recidivism risk is eligible for fifteen days for every 240 hours of completed programming.'" Rehfuss v. Spaulding, No. 1:21-cv-677, 2021 WL 2660869, at *5 (M.D. Pa. June 29, 2021); see also Hare, 2021 WL 391280, at *11-12. Jimenez has not completed 240 hours of programming. He has only earned 35 hours of credit for completed programming activities and, therefore,

has not yet earned sufficient ETCs to warrant his immediate release to home confinement or a halfway house. Thus, the Court cannot grant Jimenez the relief he seeks.

## III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 will be denied. A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: October 19, 2021